*Decisions will be entered for the respondent.*

KENTUCKY BAR FOUNDATION, INC., A NON-STOCK, NON-PROFIT CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 14892–80X.    Filed June 9, 1982.

*Bart A. Brown, Jr.,* and *Ronald D. Aucutt,* for the petitioner.
*Carolyn A. Boyer,* for the respondent.

OPINION

FAY, *Judge*: Respondent determined petitioner does not qualify for exemption from Federal income tax as an organization described in section 501(c)(3).[1] Having exhausted its administrative remedies within the Internal Revenue Service as required by section 7428(b)(2), petitioner has timely invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428(a). The issue is whether petitioner is operated exclusively for exempt purposes within the meaning of section 501(c)(3).

This case was submitted for decision on the stipulated

---

[1] Unless otherwise provided, all section references are to the Internal Revenue Code of 1954 as amended.

administrative record under Rule 122, Tax Court Rules of Practice and Procedure. The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding.

Petitioner, the Kentucky Bar Foundation, had its principal office in Frankfort, Ky., when its petition was filed.

Since 1934, all persons licensed to practice law in Kentucky have been required to be members of the Kentucky Bar Association, otherwise known as an integrated bar association. Under the constitution of Kentucky, the Kentucky Supreme Court is empowered to control and administer the law in the Commonwealth of Kentucky, including the right to practice law, and the rules, regulations, and membership of the Kentucky Bar Association (the bar association).[2] The board of governors of the bar association is the delegate of the Kentucky Supreme Court for the purpose of administering and enforcing the rules.[3]

Petitioner, the Kentucky Bar Foundation, is a nonstock, nonprofit organization incorporated on May 28, 1958, under the laws of the Commonwealth of Kentucky. Under petitioner's articles of incorporation, its stated purpose is to foster, promote, and carry on certain educational, literary, scientific, and charitable purposes, both directly and by the application of assets or income for such purposes, or to the use of any other organization whose purposes and operations are exclusively charitable, scientific, literary, or educational. Since its creation in 1958, petitioner has accumulated funds until such time as an appropriate use for such funds could be found. When the increasing and expanded duties of the bar association forced it out of the limited space it occupied in the State Capitol Building, petitioner accumulated funds for the purpose of acquiring land for, and contributing to the costs of, construction of the proposed Kentucky Bar Center Headquarters (hereinafter the bar center), which would provide permanent housing for both the bar association and petitioner, a public law library, and other public areas. It is not anticipated that petitioner's funds will be used for operating expenses of

[2]Ky. Const. sec. 116.
[3]Ky. Sup. Ct. rule 3.070.

the bar center. From July 1, 1974, through August 31, 1979, petitioner received contributions totaling $180,012.62 and earned passive investment income of $8,479.43. In 1978 and 1979, petitioner distributed $177,988.67 to the board of trustees of the bar center to acquire land to be used in constructing the bar center.[4]

On October 10, 1979, petitioner filed an application for recognition of exemption under section 501(c)(3). On May 22, 1980, respondent issued a final adverse determination and denied petitioner's exempt status on the ground petitioner was not operated exclusively for exempt purposes within the meaning of section 501(c)(3).

The issue is whether petitioner is operated "exclusively" for exempt purposes, or whether, as respondent contends, petitioner serves a "substantial nonexempt purpose" by promoting the interest and reputation of the legal profession.

An organization may qualify for exemption from Federal income tax under sections 501(a) and 501(c)(3) if it is operated exclusively for one or more of the exempt purposes enumerated in section 501(c)(3). For this purpose, "exclusively" is given a connotation different from its ordinary meaning. It does not mean "solely" or "absolutely without exception." *Church in Boston v. Commissioner*, 71 T.C. 102, 107 (1978). Thus, an organization will not be denied exemption if it partakes in activities not in furtherance of an exempt purpose so long as such nonconforming activities are insubstantial in comparison to activities which further exempt purpose(s). *Better Business Bureau v. United States*, 326 U.S. 279 (1945); *Duffy v. Birmingham*, 190 F.2d 738 (8th Cir. 1951). Similarly, where activities further both exempt and nonexempt purposes, the exemption will not be denied if the nonexempt purposes are insubstantial. *Ohio Teamsters Trust Fund v. Commissioner*, 77 T.C. 189, 196 (1981); *Professional Standards Review v. Commissioner*, 74 T.C. 240 (1980).

The proper focus is the purpose or purposes toward which the activities are directed (*B. S. W. Group, Inc. v. Commissioner*, 70 T.C. 352 (1978)), and a mere statement of that purpose is

---

[4]The board of trustees of the center was created and authorized by the Kentucky Supreme Court to act with respect to all matters relating to the ownership, management, and control of the bar center. Ky. Sup. Ct. rules 3.115(1), 3.115(2), and 3.115(2)(g).

not determinative. Nor is a State court's determination of that purpose determinative. *Watson v. United States*, 355 F.2d 269 (3d Cir. 1965). The parties herein agree that since petitioner's principal activity is the raising of funds for the construction of the bar center, petitioner's exempt status depends on the nature of the activities to be conducted at the center. Such proposed activities include the following:

(1) a continuing legal education program,
(2) a public law library,
(3) publication of the "Kentucky Bench and Bar,"
(4) a Client Security Fund,
(5) an Inquiry Tribunal,
(6) a Fee Arbitration Plan, and
(7) a Lawyer Referral Service.

Respondent agrees that certain activities—the continuing legal education program, the public law library, and the publication of the "Kentucky Bench and Bar"—serve an exempt purpose (educational) within the meaning of section 501(c)(3). Respondent further agrees that petitioner's exempt status should be determined exclusively by an analysis of the remaining activities—the lawyer referral service, the client security fund, the inquiry tribunal, and the fee arbitration plan. Thus, in its narrowest sense, the issue before us is whether any of the four disputed activities serves such a nonexempt purpose so as to deny petitioner its requested exemption. With respect to each activity, the thrust of respondent's argument is that a substantial nonexempt purpose, namely that of promoting, protecting, and enhancing the legal profession, is served.[5] We disagree.

### Lawyer Referral Service

The bar association's lawyer referral service (referral service) was established on July 1, 1977. The referral service is conducted on a statewide basis with the exception of Jefferson County (Louisville) wherein the local bar association main-

---

[5]Since the lawyer referral service, client security fund, and fee arbitration plan do not fit neatly within any of the enumerated categories of charitable activity set forth in sec. 1.501(c)(3)–1(d)(2), Income Tax Regs., respondent argues those activities are not charitable activities within the meaning of sec. 501(c)(3). Respondent's argument must be rejected. The concept of "charity" clearly is not limited to those enumerated activities but is to be used in its generally accepted legal sense. Sec. 1.501(c)(3)–1(d)(2), Income Tax Regs.

tains its own referral service. A person seeking a lawyer may use a toll-free telephone line. He is initially interviewed by a bar association staff member and is then referred to a participating member of the referral service who is selected on a rotating basis within a convenient geographic area. An initial fee of $10 is charged for a one-half hour consultation. Any charge for further consultation or work must be agreed upon by the attorney and the client and must be in keeping with the stated objectives of the referral service. The participating attorney must also agree:

(1) to carry certain amounts of professional liability insurance,

(2) to permit any fee dispute arising from a referral to be submitted to binding arbitration under the Fee Arbitration Plan,

(3) to grant all clients referred an appointment as soon as practicable after request is made, and

(4) to abide by all rules of the Referral Service regarding registration, qualification to practice law, and investigation into the responsibility, capability, character and integrity of the attorney.

Each participating member of the referral service must pay a fee to the association to be used to defray the costs of operating the service. At the time its petition was filed herein, the fee was $25 per year. The referral service is operated from the office of the director of the bar association.

The preamble to the rules governing the referral service states:

The Kentucky Bar Association recognizes that there exists a large group of persons of moderate means who have felt that legal services were not readily available. In order to respond to the needs of those persons, it is the position of the Kentucky Bar Association that a lawyer referral service be established.

The stated long-term objectives of the referral service are:

1. to assist the general public by providing a way in which any person who can afford to pay a reasonable fee for legal services may be informed of and referred to a member of the Kentucky Bar.

2. encourage lawyers to recognize the obligation to provide legal services to the general public, and

3. to acquaint people in need of legal services with the value of consultation with a lawyer to identify legal problems and seek to solve them.

We find the operation of the referral service is consistent with the preamble and its stated objectives. It serves a genuinely charitable purpose.

We find substantial support in the Circuit Court of Appeals decisions of *St. Louis Union Trust Co. v. United States*, 374 F.2d 427 (8th Cir. 1967), and *Dulles v. Johnson*, 273 F.2d 362 (2d Cir. 1959), cert. denied 364 U.S. 834 (1960), wherein bar associations which operated legal referral services were held to be organizations operated exclusively for charitable purposes within the meaning of sections 2055(a) and 812(d), I.R.C. 1939 (predecessor to sec. 2055(a)), respectively. Respondent contends the decisions in *St. Louis Union Trust* and *Dulles* incorrectly understate the benefits inuring to the legal profession and to the individual members of the profession.[6] However, we agree with the statement of the Eighth Circuit Court of Appeals:

the government overemphasizes the incidental economic benefits and unjustifiably would taint with an accusation of commercialism legal activity which is dedicated to the public good. [*St. Louis Union Trust Co. v. United States, supra* at 435.]

We reject respondent's assertion that the referral service exists to help young law school graduates establish a practice. The referral service is open to all responsible attorneys, and there is no evidence a selected group of attorneys are the primary beneficiaries of the service. The referral service is intended to benefit the public and not to serve as a source of referrals. We find any nonexempt purpose served by the referral service and any occasional economic benefit flowing to individual attorneys through a referral incidental to the broad charitable purpose served.

## Client Security Fund

On October 20, 1971, the client security fund was established by the bar association and approved by order of the Court of Appeals (now the Supreme Court of Kentucky) for the purpose of providing indemnification to clients who suffer pecuniary losses by reason of fraudulent or other dishonest acts by any

---

[6]Respondent's position is illustrated in Rev. Rul. 80–287, 1980–2 C.B. 186; and Rev. Rul. 71–505, 1971–2 C.B. 232.

member of the association acting in his or her capacity as an attorney.[7] The fund is maintained in a separate account by three trustees appointed by the board of governors of the bar association. It is funded from a portion of the dues paid by bar association members,, contributions, and investment income. Claims may be made against the fund for wrongful acts, except negligent acts of malpractice, committed by practicing attorneys against their clients. Claims are recognized only to the extent they are not otherwise recoverable under any insurance, indemnity, or bond arrangement. All payments from the fund are a matter of grace, subject to the discretionary approval of the board of governors of the bar association.

The public must often deal on faith in its relationship with lawyers. As the Second Circuit Court of Appeals stated, "It is the function of bar associations to see that this faith is not misplaced * * * the true benefit from a disciplined and socially responsive bar accrues directly to the public." *Dulles v. Johnson, supra* at 366. The client security fund provides protection to the public in the form of indemnification to clients who suffer at the hands of fraudulent and dishonest members of the bar association. It is a means by which the bar association fulfills its responsibility to the public. Moreover, no individual attorney stands to derive any direct economic benefit from the administration of this plan. We find any favorable effect the plan has on the image of the legal profession is merely an incidental consequence of its basic charitable nature.

## Inquiry Tribunal

Section 116 of the Kentucky Constitution specifically delegates the responsibility of policing unauthorized and unethical actions of bar association members to the Kentucky Supreme Court.[8] The Kentucky Supreme Court has further delegated many of its responsibilities to the board of governors of the bar

---

[7]We emphasize that, being an integrated bar association, every attorney licensed to practice in Kentucky is a member of the bar association.

[8]The Kentucky Supreme Court has adopted the standards embodied in the American Bar Association's Code of Professional Responsibility.

association (the board), to the director of the bar association, and to the inquiry tribunal.[9] The board is responsible for determining the merits of a charge of breach of ethics by any member of the bar association, while the principal role of the inquiry tribunal is to determine whether a formal charge should be filed against the attorney.[10] Thus, the inquiry tribunal is an integral part of the bar association's disciplinary functions.

Again, respondent urges us to find a substantial nonexempt purpose is served via promotion of the legal profession through the association's disciplinary functions. Respondent maintains both the Eighth and Second Circuit Courts of Appeals in *St. Louis Union Trust Co. v. United States, supra,* and *Dulles v. Johnson, supra,* understated the public esteem the legal profession derives from its disciplinary functions. We disagree and adopt the reasoning of the Circuit Courts. As the Eighth Circuit Court of Appeals stated:

this activity as to * * * internal discipline is one primarily and substantially imbued and indeed infected with a public purpose. Of course, a profession's image and its relations with the public will be enhanced when it demonstrates ethics, effective discipline, and the protection of the public from invasion externally by incompetent and illtrained persons and from imposition internally by the rascals of the profession. But this is an incident and a result rather than a basic characteristic of the endeavor. [*St. Louis Union Trust Co. v. United States,* 374 F.2d at 436.]

We see no meaningful differences in the activities and purposes behind the disciplinary operations of the bar associations involved in *St. Louis Union Trust* and *Dulles* and the disciplinary functions conducted by the Kentucky Bar Association herein. Clearly, the functions of an integrated State bar association which pertain to the maintenance of high standards of conduct and ethics have a direct public benefit. Enforcement of those high standards is necessary to assure public confidence in the legal system. We find the activities of the inquiry tribunal do not defeat petitioner's exempt status.

---

[9]Ky. Sup. Ct. rules 3.140 et seq.

[10]The director's role is primarily administrative.

## Fee Arbitration Plan

On September 20, 1975, the bar association adopted a fee arbitration plan in order to establish a procedure whereby fee disputes between an attorney and a client may be resolved by submission to binding arbitration. A three-member panel listens to the dispute. Members of the panel are not compensated for their services. Other than stenographic charges, no charge or fee is required of any party making use of the arbitration services. The panel renders a written decision with a statement of the dispute and the panel's findings. Since the inception of the fee arbitration plan in 1975, only 27 cases have arisen under the plan. The major use made of the center with respect to the fee arbitration plan is to provide a limited amount of staff support to the assistant director of the bar association who is responsible for transmitting certain documents and maintaining records of disputes.

The fee arbitration plan was adopted to provide a means of resolving disputes arising out of the lawyer-client relationship. Any client can avail himself of this procedure at no cost, excepting stenographic expenses. The plan relieves the judicial branch of Government of the burden of resolving those disputes. Thus, the plan clearly serves a charitable purpose. See sec. 1.501(c)(3)–1(d)(2), Income Tax Regs.

We reject respondent's contention that the fee arbitration plan serves a substantial noncharitable purpose by providing a low-cost, low-profile method for collecting disputed fees. The infrequent use of the procedure does not bear out respondent's contention. Only 27 cases have arisen under the plan since its inception in 1975. Respondent infers a much too narrow purpose is served by the plan. We find any intangible benefit accruing to the legal profession is only incidental to the charitable purpose served by the fee arbitration plan.

Moreover, the administration of the fee arbitration plan constitutes a minor activity at the bar center. With respect to the available procedure, the bar center is involved to a very limited extent—it lends staff support in the nature of transmitting documents and maintaining records and is only minimally involved in the proceedings. Less than 1 percent of the assistant director's time is devoted to the plan. Even if the fee arbitration plan were held to be a nonexempt purpose, the activities conducted at the center with respect to the plan

constitute an insignificant part of the plan itself and a very small portion of all the activities conducted at the center. Thus, in any event, the activities conducted at the center with respect to the fee arbitration plan do not preclude petitioner's exempt status. See *Better Business Bureau v. United States*, 326 U.S. 279 (1945).

In summary, respondent presumes each activity is motivated by the self-interest of the legal profession and its individual members. In each instance, the thrust of respondent's argument is that, through the promotion and enhancement of the legal profession, the activities conducted at the center serve a substantial noncharitable purpose. In each instance, we have found to the contrary.

Petitioner is a nonprofit organization—it has no earnings which benefit individual members of the bar association. None of the activities are connected with political or legislative causes. Instead, each of the activities involved herein is a result of the responsibility of the bar association, as a delegate of the Kentucky Supreme Court, to maintain public confidence in the legal system—a goal of unquestionable importance in a civil and complex society. The activities at issue are devoted to that goal through various means of improving the administration of justice. Respondent discounts the truly beneficial and charitable nature of these activities. As set forth above, any private or nonexempt purpose resulting from these efforts clearly is insignificant and tenuous. Accordingly, we find petitioner is operated exclusively for exempt purposes and is entitled to section 501(c)(3) exemption.

To reflect the foregoing,

*An appropriate decision will be entered.*