WESTWARD HO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Westward Ho v. Commissioner
Docket No. 2399-90X
United States Tax Court
T.C. Memo 1992-192; 1992 Tax Ct. Memo LEXIS 207; 63 T.C.M. (CCH) 2617; March 31, 1992, Filed *207 An appropriate order will be entered. Robert Andres, for petitioner. Charles B. Burnett, for respondent. COHEN
COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent determined in a final adverse ruling that petitioner did not qualify for exemption from Federal income tax under section 501(a) as an organization described in section 501(c)(3). Petitioner challenged respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The issue for decision is whether petitioner qualifies for exemption as an organization described in section 501(c)(3). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the time the petition was filed, and all Rule references are to the Tax Court Rules of Practice and Procedure. The case was submitted for decision on the stipulated administrative record. See Rule 122. The facts contained in the administrative record are assumed to be true for purposes of this proceeding. Rule 217(b)(1). Background
Westward Ho (petitioner) was incorporated on August 3, 1988, as a nonprofit corporation. Petitioner's principal office was located in *208 Burlington, Vermont, at the time it filed its petition. Petitioner's creators were Dennis Morrisseau (Morrisseau), Laura Thompson (Thompson), and Timothy Halvorson (Halvorson). Morrisseau and Thompson were its principal officers. Morrisseau and Thompson owned and operated Leunig's Old World Cafe (Leunig's) and City Market, restaurants located in the area of downtown Burlington known as the Church Street Marketplace (the Marketplace). Halvorson owned the Upstreet Cafe, a restaurant located in the Marketplace. In its Articles of Association, petitioner described its purpose as: Providing travel grants or loans to certain indigent and antisocial persons who may have a strong desire or need to leave the Burlington, Vermont area, but who lack the means to pay for transportation to their destination of choice.
Petitioner had no formal program for identifying individuals who could be benefited by relocation and discouraged applications for its services. Petitioner had no program for confirming the potential lifestyles in the cities to which the persons to whom grants were to be given were to be relocated or for exploring whether or not an individual would be benefited by voluntary *209 relocation. Homeless individuals in Burlington lived in temporary shelters. Some of the homeless individuals, particularly Michael Collelo (Collelo) and Frank Espinet, caused disturbances in the Marketplace and in the restaurants owned and operated by petitioner's officers. In one incident, Collelo threw a planter of poinsettias at the bartender in Leunig's. Collelo accepted a one-way ticket to Oregon from petitioner. He is the only person who was relocated under petitioner's program. In a letter dated September 16, 1988, to the Executive Director of the Vermont State Mental Hospital, Morrisseau wrote: Mr. Espinet has been confined to your custody and then released here many times over the last two years. He is not a native of Burlington or of Vermont. He has a long history of multiple assaults, threats and menacing sexual approaches to women in this community. Each time you " treat" and release him (to be "supervised" by Howard Mental Health? Housed and fed by Burlington's Way Station? Funded by taxpayers and the United Way?) he assaults more women and has to be returned to you. I enclose copies of just a few written statements I have collected from women he has *210 assaulted here in the last two years. (* * * If I can collect six or seven letters detailing these assaults with only a week's effort, imagine how many assaults this guy has committed in Burlington all those times that you have released him!) * * * Folks, it is time to realize that we are not going to take this any more. (Frank Espinet is by no means the only deranged and dangerous man that you have released and we have had to deal with over the last two years.) We have retained an attorney, and we are actively exploring legal action against officials and organizations who are repeatedly releasing or knowingly housing dangerous persons in this community. You are responsible for what ensues as a result of your own negligence. We will not be confined to seeking redress from the deranged individuals themselves while you sit smugly by, untested.
An article published in the October 6-13, 1988, issue of the Vanguard Press quoted Halvorson as having said: I'm all for social services, but there are just some people who need to be locked up or somewhere else. If we can send a guy who's blatantly dangerous to a place where he has family or people who know him and can help him *211 and care for him, I think we're all better off.
An article published in the October 20-27, 1988, issue of the Vanguard Press reported that Morrisseau described the creation of petitioner as: a "last resort" after spending "hundreds of hours" trying to get police, the courts and social service agencies to better control the handful of street people who * * * have harassed and physically threatened downtown merchants and customers.
In an article published in the Free Press on October 27, 1988, Thompson described a woman's encounter with an abusive individual and stated that the woman had said she "would not return [to the Marketplace] to shop or eat." In a letter to the local chapter of the United Way dated November 10, 1988, Morrisseau wrote: May I reiterate what I have said from the beginning: that COTS [the Committee on Temporary Shelter] must set limits on the number of persons it proposes to house in Burlington, it must set limits on the behavior in the community of persons it houses and must insist on self improvement efforts on the part of its clients. * * *
An article published in the November 20, 1988, issue of the New York Times reported that *212 Morrisseau "insists that * * * [the] lack of housing is irrelevant to his effort. His goal, he says, is to curb abusive behavior." A letter on petitioner's letterhead and signed by Thompson, Morrisseau, and Halvorson, dated December 21, 1988, addressed "To our Fellow Merchants", stated that petitioner "is and will remain a very small operation -- a tiny part of a very large and demanding effort over the past two years toward achieving a happier and more secure downtown." In her final adverse ruling, respondent determined that petitioner did not qualify for exemption from Federal income tax because: You are not organized exclusively for charitable purposes as required by section 501(c)(3). The providing of travel grants and loans to "certain indigent and antisocial persons who may have a strong desire or need to leave the Burlington, Vermont area but who lack the means to pay for transportation to their destination of choice" as set out in your articles of association is not a charitable purpose. You have failed to establish that you are operated exclusively for charitable purposes as required by section 501(c)(3). Your activities are not sufficiently described to be clearly *213 within the meaning of section 501(c)(3). Furthermore, you have failed to establish that you do not serve private interests more than incidentally.
Discussion
An organization qualifies for exemption from Federal income tax under section 501(a) if it is: organized and operated exclusively for * * * charitable * * * purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation * * * and which does not participate in * * * any political campaign * * * [Sec. 501(c)(3).]
Respondent contends that petitioner is not organized exclusively for charitable purposes and has not established that it is operated exclusively for charitable purposes. Respondent acknowledges that, if petitioner were to amend its Articles of Association to conform to the requirements of section 501(c)(3), petitioner could satisfy respondent's first contention. Therefore, we will address the question of whether petitioner has established that it is operated exclusively for exempt purposes. Section 1.501(c)(3)-1(c)(1), Income *214 Tax Regs., provides that: An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.
Section 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs., further provides that: An organization is not organized or operated exclusively for * * * [charitable] purposes * * * unless it serves a public rather than a private interest. Thus, * * * it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests.
Whether an organization is operated exclusively for exempt purposes is a factual determination to be based on the administrative record. B.S.W. Group, Inc. v. Commissioner, 70 T.C. 352, 357 (1978). Petitioner bears the burden of proof. Rule 217(c)(2). *215 The term "exclusively" has not been construed to mean "solely" or "absolutely without exception". Church in Boston v. Commissioner, 71 T.C. 102, 107 (1978). Nevertheless, "the presence of a single * * * [nonexempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly * * * [exempt] purposes." Better Business Bureau v. United States, 326 U.S. 279, 283 (1945). We must therefore consider whether petitioner serves a disqualifying nonexempt purpose that is substantial in nature. Copyright Clearance Center v. Commissioner, 79 T.C. 793, 804 (1982). Petitioner argues that it serves the exclusive charitable purpose described in its Articles of Association. Even if we assume that the purpose described in petitioner's Articles of Association is a charitable one, "we must be concerned with both the actual as well as the stated purposes for the existence of the organization". Christian Manner International v. Commissioner, 71 T.C. 661, 668 (1979). It is apparent that petitioner's activities were designed to rid the Marketplace and downtown Burlington *216 of disruptive homeless persons and to protect the commercial interests of petitioner's creators, who owned restaurants in the Marketplace. Homeless persons had caused disturbances in the Marketplace and in the restaurants owned by petitioner's creators. Through various media, Morrisseau, Thompson, and Halvorson expressed their concerns with the problem of homeless persons in Burlington. These expressions, however, reflected frustration with the harassing and abusive behavior of some of the homeless persons and fears of financial loss, rather than concern for the homeless persons. By ridding the area of homeless persons, petitioner's creators were providing themselves with a more desirable commercial location. Petitioner had no formal method for identifying individuals who could be benefited by relocation and discouraged applications for its services. Therefore, petitioner's officers had complete discretion in deciding to whom to offer travel grants. It enabled them to offer the grants to those homeless persons whom they considered disruptive and potentially harmful to their business interests. Indeed, the only person who was relocated by petitioner had caused a disturbance *217 at Leunig's, owned by Morrisseau and Thompson. Petitioner had no program for confirming the potential lifestyles in the cities to which the persons to whom grants were to be given were to be relocated or for exploring whether or not an individual would be benefited by voluntary relocation. This suggests that petitioner was not genuinely concerned with the fate of the homeless persons it was relocating, but rather with relocating such persons out of Burlington. Petitioner argues that any private benefit its officers may derive from it is insubstantial and outweighed by the public opprobrium to which they have been subjected because of the creation of petitioner. The relevant question, however, is whether the benefits flowing to private persons are incidental to the main purpose of the organization, not whether those benefits are substantial. See Kentucky Bar Foundation v. Commissioner, 78 T.C. 921, 926 (1982). Petitioner was operated to serve the private interests of petitioner's creators more than incidentally. If a purpose of the organization is to confer private benefits, it is irrelevant that the benefits are outweighed by unexpected burdens. Because *218 more than an insubstantial part of petitioner's activities is in furtherance of a nonexempt purpose and petitioner serves the private interests of its creators more than incidentally, petitioner fails the operational test of section 501(c)(3). The other arguments advanced by petitioner are irrelevant to the disposition of this case, and, therefore, we will not address them. Petitioner does not qualify as an organization exempt from Federal income tax under section 501(a). To reflect the foregoing, An appropriate order will be entered.