SPANISH AMERICAN CULTURAL ASSOCIATION OF BERGENFIELD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Spanish Am. Cultural Ass'n v. Commissioner
Docket No. 11866-92X
United States Tax Court
T.C. Memo 1994-510; 1994 Tax Ct. Memo LEXIS 512; 68 T.C.M. (CCH) 931; October 12, 1994, Filed *512 Decision will be entered for respondent. P, a nonprofit organization, was created in order to foster the cultural heritage of Bergenfield, New Jersey's Spanish-American residents. Except for modest charitable donations and scholarships, P primarily engages in social activities designed to provide Bergenfield's Spanish-American residents with a sense of community. P was granted exempt status under sec. 501(a), I.R.C., as a social welfare organization described in sec. 501(c)(4), I.R.C. Thereafter, P applied for exempt status as a charitable organization described in sec. 501(c)(3), I.R.C.Held: P does not qualify as a charitable organization described in sec. 501(c)(3), I.R.C., because its social activities are more than insubstantial in comparison to its charitable activities. For petitioner: Joseph H. Cerame. For respondent: Richard E. Buchbinder and Francis J. Strapp, Jr. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: Respondent determined that petitioner qualified for exemption from Federal income tax under section 501(a) as an organization described in section 501(c)(4). Respondent further determined that petitioner does not qualify as an organization described in section *513 501(c)(3). Petitioner challenges respondent's determination by invoking the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The sole issue for our determination is whether petitioner qualifies as an organization described in section 501(c)(3). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. This case was submitted on the stipulated record pursuant to Rule 122. The evidentiary facts and representations contained in the administrative record are assumed to be true. Rule 217(b)(1). Background
Petitioner, Spanish American Cultural Association of Bergenfield, Inc. (SACAB), is a nonprofit corporation incorporated on November 25, 1986, under New Jersey law. Pursuant to Rule 211(a), SACAB petitioned this Court for a declaratory judgment, as authorized by section 7428, that it qualified as an organization described in section 501(c)(3). Petitioner's principal place of business was located in Bergenfield, New Jersey, at the time its petition was filed. Petitioner was organized in order to foster the cultural *514 heritage of Bergenfield's Spanish-American residents. Specifically, in its Certificate of Incorporation, petitioner stated that: The purposes for which the corporation is organized are to preserve, present and enhance the cultural heritage of Spanish-American people; to provide for the unification of our community; to provide for us and all future generations of our community a cultural and social link to our Spanish heritage; to introduce our youth into those ideals, ambitions and overall responsibilities for the improvement of society; to guide our membership in the fulfillment of their duties as residents of this country to the knowledge of the system of government in the United States; to help our youth understand the workings of the government and the importance of their participation; to provide for our United States born youth a better understanding of the cultural and historical background of their ancestors; to give awards in the form of scholarships to deserving students of Spanish descent who are residents of Bergenfield, New Jersey; and to erect a cultural center in Bergenfield, New Jersey, to be used by the Spanish community and friends.
Petitioner is a membership *515 organization in which members pay an annual $ 10 membership fee. Petitioner originally sought exemption from Federal income tax under section 501(c)(3) and to this end executed a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code, on December 30, 1988. By letter dated June 29, 1989, the Internal Revenue Service (IRS) informed petitioner that additional information was needed in order to properly rule on petitioner's exemption request. Among other things, the IRS requested specific information as to petitioner's activities. Petitioner responded as follows: Activities - The Spanish American Cultural Association of Bergenfield, Inc. was established for the purpose of bringing the spanish culture into the Bergenfield community by way of conducting dances, cultural affairs, and exhibitions. It is also the goal of the organization to provide a way for Hispanic people in the surrounding area to meet other Hispanics and to find assistance and advice.
As of the time of the IRS's request for additional information, petitioner had sponsored five activities. The first three activities were dinner parties and/or dances, in which *516 admission fees were charged to all who attended, designed to recruit new members and raise funds. The fourth activity was a "Spanish Dinner Dance", in which an admission fee was charged to all who attended, designed to: raise money, recruit new members, and provide local residents an opportunity to observe Hispanic performers. The fifth activity was a "Spanish Musical Operetta" (better known in Spanish as a "Zarzuela") performed by the Spanish Theater Repertory Company, Ltd., in which an admission fee was charged to all who attended except to SACAB members and 90 local residents and students. Petitioner alleged that the purpose of the Zarzuela was to "enrich the community with quality Hispanic entertainment and cultural [sic]." Petitioner's members meet monthly in order to plan future activities, exchange community information, and provide a social atmosphere. Additionally, petitioner plans to open a community center using funds raised through membership dues, sponsored activities, and charitable contributions. Petitioner also has implemented a scholarship program in which Hispanic high school students are the potential recipients. Lastly, petitioner has established a contributions *517 fund in order to make gifts to local tax-exempt organizations. By letter dated August 10, 1989, the IRS again requested additional information from petitioner pertaining to its application for exemption as a section 501(c)(3) organization. In addition to the request, the IRS informed petitioner that as of that time it appeared that petitioner was more appropriately classified as a social welfare organization described in section 501(c)(4). Thus, the IRS invited petitioner to file a Form 1024, Application for Recognition Under Section 501(a) or for Determination Under Section 120. On August 24, 1989, petitioner executed a Form 1024. By letter dated August 31, 1989, the IRS informed petitioner that SACAB qualified for exempt status under section 501(c)(4). Subsequently, petitioner became concerned by its difficulty in raising sufficient funds because of potential donors' inability to deduct contributions to a section 501(c)(4) organization. Therefore, petitioner decided to reapply for exemption as a section 501(c)(3) organization and to this end executed a second Form 1023 on July 29, 1990. Petitioner included a 1990 calendar of expected events, attached to the second Form 1023, *518 which provided the following: June 10th
General Membership Meeting
Speaker - Graceli Gongolo (Exchange Student
from Belize) and Yolanda Merlotti
July 8th
General Membership Meeting
Speaker - Benny Garcia
(Regarding Services available to Hispanics)
July 22nd
Annual Picnic
August 12th
General Membership Meeting
Speaker - John Chepurko
Regarding the Retarded Citizens
August 26th
Picnic for Retarded Citizens
September 9th
General Membership Meeting
September 15th (Tentative)
Trip to Atlantic City
October 6th
Annual Dance (Fund Raiser)
October 13th
General Membership Meeting
November 4th
General Membership Meeting
December 9th
General Membership Meeting
December 15th
Annual Christmas Party
From petitioner's inception until the time it executed its second Form 1023, petitioner had the following receipts:
Year
Dues
Fundraisers
Interest
Total
1987
$ 1,455
$ 11,650
$   0
$ 13,105
1988
290
9,826
0
10,116
1989
785
22,219
648
23,652
1990(6 Mo)
370
12,369
573
13,312
During this same time, petitioner incurred expenses and made donations (including the awarding of scholarships) in the following amounts: Operating
Fundraising
Year
Expenses Activities Donations
Total
1987
$   575
$  2,304
$   277
$  3,156
1988
927
6,911
450
8,288
1989
4,063
8,782
575
13,420
1990(6 Mo)
2,759
10,604
1,172
14,535
*519 By letter dated December 13, 1990, the IRS informed petitioner that its request for exemption under section 501(c)(3) had been denied. Thereafter, petitioner protested the adverse determination before the IRS's Appeals Office. By letter dated April 10, 1992, the Appeals Office notified petitioner that the granting of exemption under section 501(c)(4) had been confirmed and that its application for exemption under section 501(c)(3) was denied. Thereafter, petitioner, having exhausted its administrative remedies, petitioned this Court for a declaratory judgment. Discussion
The only issue we are called upon to determine is whether petitioner qualifies as an organization described in section 501(c)(3). Although the case was submitted on the stipulated record pursuant to Rule 122, petitioner still bears the burden of proof as to whether it qualifies as an organization described in section 501(c)(3). Rule 217(c)(2)(A). Respondent contends that petitioner does not qualify as an organization described in section 501(c)(3) because petitioner's primary activity has been social. Respondent further contends that any charitable activities engaged in by petitioner are insubstantial *520 and at most incidental to its substantial social purpose and activities. On the other hand, petitioner broadly asserts that it was organized and is operated exclusively for the purposes required by section 501(c)(3). Additionally, petitioner attempts to justify its charitable activities which are modest in comparison to its social functions by stating that it is saving most of its funds in order to "buy a home" for its organization. Upon obtaining a community center, petitioner claims that more of its funds can be used for charitable disbursement. For purposes of this case the relevant statutory scheme is found in section 501(a) and sections 501(c)(3) and (4). As a general rule, under section 501(a)(1) organizations described in both sections 501(c)(3) and (4) are exempt from taxation. Section 501(c) provides in pertinent part: (c) LIST OF EXEMPT ORGANIZATIONS. -- The following organizations are referred to in subsection (a): * * * (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, * * * (4) Civic leagues or organizations *521 not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.
Although both organizations described in sections 501(c)(3) and (4) are exempt from tax under section 501(a), only donations made to those described in section 501(c)(3) are deductible by their donors. See Sec. 170(c). As to whether an organization is "organized and operated exclusively" for the purposes enumerated in section 501(c)(3), the Treasury Regulations establish two tests: the "organizational test" and the "operational test". See sec. 1.501(c)(3)-1(b) and (c), Income Tax Regs. Respondent concedes that petitioner, having amended its Certificate of Incorporation, satisfies the organizational test established by Income Tax Regs. section 1.501(c)(3)-1(b). Therefore, resolution of the present dispute centers around whether petitioner satisfies the operational test. Under the operational test An organization will be regarded *522 as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. [Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.; emphasis added.]
In applying the operational test, this Court has stated that "an organization will not be denied exemption if it partakes in activities not in furtherance of an exempt purpose so long as such nonconforming activities are insubstantial in comparison to activities which further exempt purposes." Kentucky Bar Foundation v. Commissioner, 78 T.C. 921, 923 (1982) (citing Better Business Bureau v. United States, 326 U.S. 279 (1945)). Whether the operational test has been satisfied is a question of fact. Goldsboro Art League, Inc. v. Commissioner, 75 T.C. 337, 343 (1980); est of Hawaii v. Commissioner, 71 T.C. 1067, 1079 (1979) affd. without published opinion 647 F.2d 170 (9th Cir 1981). *523 It is against this backdrop that we determine petitioner's exempt status. A review of the entire record discloses that to date petitioner has engaged in essentially three types of activities: social, charitable, and educational. Both charitable and educational purposes are specifically enumerated in section 501(c)(3), whereas social purpose is not so enumerated. In light of the operational test and Kentucky Bar Foundation, supra, our task necessarily becomes a weighing process of the amount and extent of petitioner's charitable and educational activities compared to its social activities. Essentially, we agree with respondent that at the present time the amount and extent of petitioner's social purpose and activities render its charitable and educational activities insubstantial by comparison. Petitioner's scholarship program and its donations to other tax-exempt organizations may be classified as charitable activities. The presentation of the "Zarzuela" may be classified as an educational activity given that petitioner's intent is to introduce Hispanic culture to the Bergenfield community. See sec. 1.501(c)(3)-1(d)(3), Income Tax Regs. In all other respects, petitioner's *524 activities were essentially social in nature. All four dinner and/or dance parties, which comprise four of the five major activities sponsored by petitioner to date, were primarily, if not exclusively, social in nature. The above conclusion is further supported by a review of petitioner's financial disclosures contained in its Form 1023. During 1987, 1988, 1989, and the first six months of 1990, petitioner used 2.1, 4.4, 2.4, and 8.8 percent, respectively, of the amount of funds it had received in each of those years towards scholarships and charitable donations. By petitioner's own admission, it "spends approximately 75% of its time preparing events, recruiting and carrying [on] our cultural activities and fund-raisers." Although we do not wish to establish percentage thresholds for purposes of applying the operational test, Church in Boston v. Commissioner, 71 T.C. 102, 108, (1978), the percentages in this case are persuasive in demonstrating the insubstantiality of petitioner's charitable and educational activities in comparison with its social activities. In defense of its modest expenditures on educational or charitable activities, petitioner *525 asserts, as already noted, that it is saving most of its funds in order to "buy a home", which once established would permit more income to be "available for disbursement." Petitioner's assertions of its intent to fulfill the exempt purposes enumerated in section 501(c)(3) must be substantiated by "sufficient information about its proposed activities to warrant a conclusion that it will operate in furtherance of exempt purposes." La Verdad v. Commissioner, 82 T.C. 215, 221 (1984) (citing Pius XII Academy, Inc. v. Commissioner, T.C. Memo. 1982-97, affd. without published opinion 711 F.2d 1058 (6th Cir. 1983)). The bulk of information contained in the record relating to such intent is found in petitioner's statement that: We are also trying to secure a parcel of land to build a cultural center where members can congregate, and where local individuals may learn more about the Hispanic culture. We have established a building fund which is being maintained for this purpose. The Bergenfield mayor and council have asked us for a detailed application concerning our request for the gift of land from *526 the town. We are in the process of preparing such an application.
Beyond the above stated, the record fails to substantiate petitioner's building intentions except for a reference in a letter to the IRS that: (1) A building fund had been established and (2) members have discussed "over the coffee machine" the idea of operating a Saturday school for the young at the center. Specifically, the record does not contain any of the following: (1) An application for a land grant, (2) an alternative plan in the event the grant cannot be obtained, (3) architectural plans, or (4) any indication that an architect has been solicited. Even if petitioner's building plans were substantiated, our inquiry would necessarily have to proceed to an analysis of the nature of the activities to be conducted at petitioner's community center. See Kentucky Bar Foundation, supra at 924. By petitioner's own admission, the center would be used as a place for members to congregate in addition to a place where others could learn more about Spanish culture. Given the substantial social nature of both petitioner's activities to date and its planned activities listed in its *527 proposed 1990 calendar of events, we are left with the inescapable conclusion that substantial social activity would take place at the proposed community center. To conclude otherwise would require that we rely on petitioner's unsubstantiated intention to markedly increase its exempt purpose activities in comparison to its social activities. As further justification for the insubstantiality of its charitable activities in comparison to its social activities, petitioner in a letter to the IRS stated: In summation, and perhaps to put it too bluntly, this is an organization which is struggling in its infancy to make a foothold in the community so that it may be able to have a greater impact on its charitable and scholastic targets. It is trying to acquire and hold on to greater and greater numbers of members and is doing so by the social and cultural affairs that it runs. The theory here is obviously, the greater the number of active member [sic] the greater the fund raising ability and the greater the end result towards the target purposes.
Despite petitioner's honorable intentions, inherent in its argument is the admission that at the present time its charitable activities *528 are insubstantial in comparison to its social activities. To reflect the foregoing, Decision will be entered for respondent.