T.C. Memo. 1996-247


UNITED STATES TAX COURT


BOB JONES UNIVERSITY MUSEUM AND GALLERY, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 717-95X.                    Filed May 29, 1996.


<u>John C. Stophel</u>, <u>Richard W. Bethea, Jr.</u>, and <u>Stephen S.
Duggins</u>, for petitioner.

<u>Charles B. Burnett</u> and <u>Monice Rosenbaum</u>, for respondent.


MEMORANDUM OPINION


FOLEY, <u>Judge</u>:  Petitioner seeks a declaratory judgment under
section 7428(a) that it is exempt from Federal income taxation
under section 501(a) as an organization meeting the requirements
of section 501(c)(3).  Pursuant to Rule 122, this case was

submitted for decision based on the stipulated administrative record as defined in Rule 210(b)(10). Petitioner has exhausted its administrative remedies within the Internal Revenue Service as required by section 7428(b)(2) and Rule 210(c)(4), received a final adverse ruling dated December 2, 1994, and invoked the jurisdiction of this Court by a petition filed on January 12, 1995.

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Petitioner was incorporated as a nonprofit corporation under the laws of South Carolina on June 2, 1992. Petitioner is a museum and art gallery located on the campus of Bob Jones University (the University) in Greenville, South Carolina.

The University first opened an art gallery in 1951, and prior to petitioner's incorporation, the art gallery was a part of the University. The museum and art gallery have been housed in their present location since 1965. Petitioner represents that the museum contains "one of the greatest collections of religious paintings and works of art in the western hemisphere."

At one time, the University was a tax-exempt organization. The University's exempt status was revoked, however, as a result of a 1983 Supreme Court decision. See Bob Jones Univ. v. United States, 461 U.S. 574 (1983). The University maintains a policy

that prohibits students from engaging in interracial dating and marriage, and the Supreme Court found that policy to be contrary to public policy.

Petitioner's charter states that petitioner was organized for the following reasons:

> To operate a museum and art gallery which will be open to the public with the hope that it will contribute substantially to the need of the Southeastern United States for cultural and artistic opportunities akin to that of other regions long recognized for their outstanding art galleries which enrich the lives of their people.

> To solicit, collect, receive, accumulate, administer and disburse funds and property in such a manner as will, in the sole discretion of the board of directors, most effectively operate to further religious, charitable, scientific, literary, or educational purposes, either directly or by contributions to any organization described in Section 501(c)(3) of the Internal Revenue Code, with the exception of organizations testing for public safety.

In essence, petitioner is taking over all of the operations of the museum previously managed by the University. At the outset, the museum operated by petitioner will display the same artwork, retain the same employees, and be housed in the same building (the Building) as the museum operated by the University. Unlike the University, however, petitioner does not prohibit interracial dating or marriage.

Petitioner and the University entered into a 3-year lease agreement beginning January 1, 1993, under which petitioner is

renting the Building.[1]  Under the terms of the lease agreement, petitioner is to pay the University a total of $105,600 per year. The Building contains 35,200 square feet of floor space.  The rent charged thus equals $3 per square foot, an amount substantially below the Building's fair market rental value of $10-$12 per square foot.  The lease agreement states "that all works of art, furniture, fixtures, and other items of personal property located on or in the Leased Premises" are owned by the University and are being lent to petitioner free of charge for the 3-year term of the lease.  The artwork initially to be displayed by petitioner consists exclusively of artwork on loan from the University, but petitioner over time intends to acquire additional artwork to display.

In addition, the lease agreement states that the University is responsible for the payment of taxes and repair and utility costs as well as for the maintenance of personal injury and property damage liability insurance relating to the Building. Petitioner, however, must provide routine maintenance and care for all artwork it borrows.  To the extent that petitioner's employees perform any restoration services on artwork owned by

---

[1]The lease agreement provides that petitioner "shall have the option to extend the term of this Lease for additional terms of three (3) years each at a rental rate to be determined after consideration of all of the facts and circumstances at the time of renewal."  The original 3-year term ended on Dec. 31, 1995. The administrative record does not indicate whether the lease agreement has been extended.

the University, petitioner will insist on reasonable remuneration.

According to its bylaws, petitioner is governed by a board of directors that must consist of at least three members and that is self-perpetuating. The board appoints officers for 1-year terms. Both the directors and the officers serve without compensation from petitioner.

Petitioner's board of directors currently consists of five persons: Bob Jones, chancellor of the University and the son of the University's founder; Bob Jones III, president and a member of the board of the University and the son of Bob Jones; John Brausch, an accountant; Terry E. Haskins, an attorney; and R. Dana Sullivan, a businessman.

Petitioner's officers are as follows: Bob Jones III, president; Bob Wood, vice president (Mr. Wood is also a vice president of the University); Roger Syrja, treasurer; and Roy A. Barton, Jr., secretary (Mr. Barton is also the executive director of financial affairs for the University).

In recent years, the number of visitors to the museum has exceeded 20,000 annually. Approximately 80 percent of the visitors have no connection with the University. The museum is open to the public free of charge. Petitioner anticipates that substantially all of its revenue will come from contributions. The balance of its revenue will come from sales of artwork reproductions in a gift shop.

## Discussion

### I. In General

Section 501(a) exempts organizations described in section 501(c)(3) from Federal income tax.  Section 501(c)(3) includes:

> Corporations * * * organized and operated exclusively for religious, charitable, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation * * * and which does not participate in, or intervene in, * * * any political campaign * * *.

The requirement that a corporation be organized exclusively for permitted purposes is referred to as the "organizational" test. The requirement that a corporation be operated exclusively for permitted purposes is referred to as the "operational" test. Only the operational test is at issue in this case.

Section 1.501(c)(3)-1(c), Income Tax Regs., provides that an organization will be regarded as "operated exclusively" for one or more exempt purposes only if three requirements are satisfied: (1) The organization engages primarily in activities that accomplish exempt purposes, and no more than an insubstantial part of its activities is in furtherance of a nonexempt purpose; (2) the net earnings of the organization do not inure in whole or in part to the benefit of private shareholders or individuals; and (3) the organization is not an "action" organization that attempts to influence legislation by propaganda or otherwise.

Section 1.501(c)(3)-1(d)(3), Income Tax Regs., expressly includes museums within the scope of section 501(c)(3). Museums, of course, must also satisfy all other requirements of section 501(c)(3) to qualify for exemption. In her final adverse ruling, respondent provided the following explanation for denying petitioner's application for exempt status:

> This ruling is made for the following reasons. You are not operated exclusively for exempt purposes. Your operation results in substantial private benefit to Bob Jones University, which is not exempt from income tax under § 501(c)(3) of the Code because of its racially discriminatory policies. Your earnings inure to private shareholders or individuals. Furthermore, you are operated for a substantial non-exempt purpose.

This explanation appears to set forth four separate justifications for denying petitioner's application for exemption. In substance, however, it sets forth a single justification. Respondent contends that the University derives an impermissible benefit from petitioner's operation and that petitioner, by providing such benefit, furthers a substantial nonexempt purpose. Respondent argues that the University receives an impermissible benefit based on: (1) Petitioner's payment of rent to the University; (2) petitioner's payment of salaries to employees formerly employed by the University; (3) petitioner's exhibition of artwork on loan from the University; (4) the University's influence on petitioner's board; (5) petitioner's location on the campus of the University; and (6) the reputational benefit that the University will derive from

its association with petitioner.  Even if none of these factors alone is found to be disqualifying, respondent maintains that their cumulative effect precludes petitioner's qualification for exempt status.

As a preliminary matter, we address respondent's contention that petitioner has conceded that it furthers a substantial nonexempt purpose.  Respondent emphasizes that petitioner's application for tax-exempt status contained the following statement:  "One of the purposes behind the establishment of the organization is to allow for gifts to be made to the museum and art gallery as charitable contributions, whereas no such deduction would be allowed for such contributions if they were given to the University."  (Emphasis added.)  We do not agree with respondent that this statement constitutes a disqualifying admission of a nonexempt purpose.  The "purpose" of allowing donors to deduct contributions, which presumably induces a larger number and greater amount of contributions to an organization, motivates virtually every organization's decision to seek exempt status.  If that objective precluded an organization from qualifying for tax exemption, few if any organizations would ever satisfy the section 501(c)(3) requirements.  More importantly, the sentence in petitioner's application immediately following the one quoted above states:  "Contributions to the organization will be used solely for the operation of the museum and art gallery and for acquisition of additional art as available funds

permit." Petitioner's stated purposes thus are consistent with those of any museum.

Respondent contends that, notwithstanding petitioner's stated purposes, one of petitioner's actual purposes is to funnel tax-deductible contributions to the University. For support, respondent quotes <u>Christian Manner Intl., Inc. v. Commissioner</u>, 71 T.C. 661, 668 (1979), which states: "It has been recognized * * * that an organization engaged in a single activity may have more than one purpose in conducting the activity. So we must be concerned with both the actual as well as the stated purposes for the existence of the organization and the activities it engages in to accomplish those purposes." We reject respondent's contention that petitioner's actual purpose is to funnel tax-deductible contributions to the University. We see nothing improper about an educational organization's having as one of its purposes the receipt of tax-deductible contributions and the use of those contributions to pay ordinary and necessary business expenses. In addition, we find <u>Christian Manner International</u> readily distinguishable from the present case. In <u>Christian Manner International</u>, the founder of a nonprofit corporation wrote books that advanced a purportedly religious message and received proceeds from the sale of the books. The Court concluded that the corporation's activities resembled ordinary commercial publishing practices and that the corporation's principal purpose was commercial in nature. In the present case,

there is no doubt that petitioner is a bona fide museum that furthers educational purposes.

II.  Private Benefit Factors

We now turn our attention to the specific factors cited by respondent as the basis for her final adverse determination.

A.  Petitioner's Payment of Rent to the University

Respondent contends that petitioner's payment of rent to the University confers on the University an impermissible private benefit.  Respondent states:

> This [fundraising by the museum] will result in direct economic benefit to Bob Jones University because tax-deductible contributions made to Petitioner will be used to reimburse Bob Jones University for rental of the building on the University campus where the art collection is housed.  This will relieve Bob Jones University of the cost of operating the museum itself, and will allow Bob Jones University to have the benefit of the museum on its campus financed by tax-deductible contributions.

The principal inquiry in determining whether rental arrangements create private benefit or inurement is whether the rental payments are excessive.  See B.H.W. Anesthesia Found. v. Commissioner, 72 T.C. 681, 686 (1979) (focusing on "whether comparable services would cost as much if obtained from an outside source in an arm's-length transaction").  In the present case, petitioner is to pay the University $105,600 per year, which is substantially less than the Building's fair market value.  Respondent contends that payments for less than fair market value can create private inurement.  For support,

respondent quotes Founding Church of Scientology v. United States, 188 Ct. Cl. 490, 412 F.2d 1197 (1969), which states: "That the benefit conveyed may be relatively small does not change the basic fact of inurement." Id. at 497, 412 F.2d at 1200. This quotation, however, is taken out of context. The same case concludes that an organization may "incur ordinary and necessary expenditures in the course of its operations without losing its tax-exempt status." Id. at 496, 412 F.2d at 1200. We conclude that petitioner's payment of below-market rent constitutes an "ordinary and necessary" expenditure and does not confer an impermissible private benefit on the University.

B. Petitioner's Payment of Employees' Salaries

Respondent states that petitioner has retained the same museum employees that the University had employed. Because the burden of paying the employees' salaries has shifted from the University to petitioner, respondent maintains, the University is receiving a private benefit.

We reject respondent's argument. Petitioner is an independent organization that conducts its own operations. Petitioner pays its employees to perform services for the museum. Although petitioner's employees previously worked for the University, they do not currently provide any services to the University in exchange for their salaries. Therefore, we conclude that petitioner's payment of its employees' salaries does not confer a private benefit on the University.

C.  Petitioner's Use of Artwork Lent by the University

The lease agreement between petitioner and the University restricts to the Building the use of all leased artwork, furniture, and fixtures.  Respondent contends that this restriction unduly limits petitioner's operations.

We disagree.  The terms of the lease agreement are somewhat restricting, but the lease agreement expires after 3 years.  Moreover, respondent concedes that displaying artwork on loan is a common practice of museums.  Respondent further concedes that petitioner is not paying the University an excessive amount for its use of the artwork.  In fact, petitioner is not paying the University anything for its use of the artwork.  Based on these facts, we conclude that the lease agreement does not confer an impermissible private benefit on the University.

D.  Excessive Control

Respondent contends that persons on petitioner's board of directors who are affiliated with the University will manage petitioner for the purpose of benefiting the University.  There are no bright-line standards that address the effect on exempt status, if any, of overlapping boards of directors.  In Rev. Rul. 66-358, 1966-2 C.B. 218, the Commissioner concluded that a nonprofit organization spun off from a taxable corporation was tax exempt even though the nonprofit organization's directors consisted of the taxable corporation's officers.  Thus, the Commissioner has recognized that overlapping boards of directors

- 13 -

do not automatically prevent an organization from qualifying for exempt status.

Two factors in the present case weigh in petitioner's favor. First, the University controls less than 50 percent of the votes on petitioner's board of directors. Only two of petitioner's five directors, Bob Jones and Bob Jones III, are employed by the University. Second, we agree with petitioner that the issue of control would be relevant only if petitioner and the University were to engage in transactions in which petitioner paid the University unreasonable amounts for goods or services. See Bubbling Well Church v. Commissioner, 74 T.C. 531, 537 (1980) ("If members of the Harberts family [which made up the entire board of directors] were actually engaged in performing employment services, compensating them in reasonable amounts for those services would not disqualify petitioners for exemption."), affd. 670 F.2d 104 (9th Cir. 1981). Given that University officials do not control a majority of petitioner's board of directors and that the record does not lead us to believe that petitioner will make unreasonable payments to the University, we conclude that the current composition of the board does not preclude petitioner from satisfying the requirements of section 501(c)(3).

E. Location

Respondent contends that petitioner's location on the University's campus confers a private benefit on the University.

In particular, respondent emphasizes that the University requires all of its students to visit the museum as part of a required freshman course and as part of several elective courses. Petitioner contends that the University's requirement that students visit the museum is not problematic. Petitioner emphasizes that other schools may require students to visit museums as part of their academic curricula and that whether those museums are located on or off campus does not affect the tax-exempt status of the schools imposing the requirement.

We conclude that any benefit the University derives from petitioner's location is merely incidental. See Kentucky Bar Found., Inc. v. Commissioner, 78 T.C. 921, 926 (1982). Respondent has not cited, nor have we found, any cases that suggest that the location of an organization may affect its eligibility for exempt status. Moreover, approximately 80 percent of all visitors to the museum are not affiliated with the University. Evidently, the location does not deter public visitors.

F. Enhancement to Reputation

Respondent contends that petitioner's name and location serve to "enhance the University's educational and spiritual reputation" and thus confer a private benefit on the University. While we agree that the University receives an intangible benefit from petitioner's name and location, we conclude that the benefit is minimal and incidental. See id.

Respondent is especially concerned about preventing the University from circumventing the Supreme Court's 1983 decision in <u>Bob Jones Univ. v. United States</u>, 461 U.S. 574 (1983). Respondent contends that, if petitioner prevails, "Bob Jones University will be able effectively to achieve the tax exempt status which was denied to it by the Supreme Court." By spinning off component parts, respondent states, the University "may achieve an aura of tax-exempt status itself by being associated with various tax-exempt spin-offs." Respondent further contends that a decision for petitioner would create a "slippery slope". She believes that if the University is allowed to spin off its museum, it may next attempt to spin off other component parts, such as its library, cafeteria, and bookstore.

Respondent's concerns about spinoffs are misplaced for several reasons. First, as petitioner aptly points out, respondent does not cite any cases to support her "aura" argument, nor does she clearly define this exempt status-defeating "aura". Second, libraries, cafeterias, and bookstores are essential parts of a university, while most universities do not maintain art museums. Third, a cafeteria or bookstore spun off from a taxable corporation might not independently qualify for exempt status. Finally, while additional concerns may arise if a university were to attempt to spin off one of its essential parts, those concerns are not implicated here.

We find problematic and reject the notion that enhancement of another entity's "educational and spiritual reputation" may preclude exempt status. Respondent has not cited, nor have we found, any cases supporting her position.

G. Cumulative Effect of These Factors

Ultimately, respondent concedes that "most of the individual factors * * * may not appear to result in more than incidental private benefit" but contends that the "cumulative effect" of these factors creates a private benefit. We disagree. Based on our review of the record, we conclude that petitioner satisfies the requirements of section 501(c)(3) in substance as well as in form. Petitioner is a museum, open to the public free of charge, that displays what petitioner claims is one of the greatest collections of religious art in the Western Hemisphere. Respondent has not challenged this claim. With respect to all financial dealings between petitioner and the University, respondent has conceded that petitioner is paying the University fair market value or less. While there is no doubt that the University receives certain benefits from petitioner's existence, these benefits are merely incidental.

III. Conclusion

Respondent's arguments ultimately lead to the conclusion that a taxable corporation could never spin off a tax-exempt organization and conduct subsequent financial dealings with it. Because funds raised by a tax-exempt organization generally come

from tax-deductible donations, respondent's position implies that any transfer by an exempt organization to a taxable corporation would create a private benefit or inurement problem.  We reject this position.  Accordingly, we hold that petitioner's operation does not result in an impermissible private benefit to the University and that petitioner's net earnings do not inure to the University.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.